| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED: January 14, 2020 11:36 AM<br>FILING ID: ED800314BDE55<br>CASE NUMBER: 2020CV30153 |
| Plaintiff:   CYNTHIA PACHECO<br><br>Defendants:  THOMAS ROSKI and MAJESTIC REALTY CO., a California corporation | ▲ COURT USE ONLY ▲<br><br>Case No.:<br><br>Div.:             Ctrm: |
| Plaintiff's Attorneys:<br>Name:     Clifford L. Beem, #917<br>          A. Mark Isley, #26107<br>          Danielle C. Beem #45189<br>Address:   730 Seventeenth Street, Suite 850<br>          Denver, Colorado 80202<br>Phone No.: 303.894.8100<br>Fax No.:   303.894.8200<br>E-Mail:    clbeem@beemlaw.net<br>           amisley@beemlaw.net<br>           dcbeem@beemlaw.net | |
| **COMPLAINT** | |

Plaintiff, Cynthia Pacheco, by and through her attorneys, BEEM & ISLEY, P.C., respectfully submits this Complaint against the Defendants, Thomas Roski and Majestic Realty Co., and alleges and avers as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Cynthia Pacheco, is and was at all times relevant a citizen of the State of Colorado.

2. Defendant, Thomas Roski ("Roski"), was a citizen of the State of Colorado at all relevant times. However, upon information and belief, Defendant Roski may now reside in California at 6990 Goldenrain Way, Rancho Cucamonga, California 91739.

3. Defendant, Majestic Realty Co. ("Majestic"), is and was at all relevant times a California corporation doing business in the State of Colorado with a principal address located at 13191 Crossroads Pkwy. NO, 6th Fl., City of Industry, California 91746.

1

Exhibit A

4. Venue is proper in the City and County of Denver pursuant to C.R.C.P. 98(c)(5) because the acts and omissions alleged herein occurred in Denver, Colorado.

## GENERAL ALLEGATIONS

1. Majestic is a large, privately-held commercial real estate developer and owner of business, office, and industrial parks.

2. Defendant Roski is a member of the family that founded Majestic and that currently owns and/or controls the business. Defendant Roski's grandfather founded the business. His uncle, Edward P. Roski, Jr., is the President and Chairman of the Board of Majestic, and his father, Raymond Roski, is an Executive Vice President. At least three other members of the Roski family hold high-level positions within Majestic: Michael Roski (Senior Vice President), Katrina Roski (Vice President), and Reon Roski (Managing Director and Board Member).

3. Plaintiff and Defendant Roski came to know each other through several mutual friends, relatives, and acquaintances while growing up in California, and over time they became platonic friends.

4. Plaintiff eventually moved to Colorado.

5. In approximately 2016, Defendant Roski decided to relocate from California to work in the Colorado office of his family's commercial real estate business—Majestic.

6. Around the same time that Defendant Roski decided to move to Colorado, Plaintiff was also looking to move her residence, and the two decided to share an apartment located at 2555 17th Street, Apartment 203, Denver, Colorado 80211.

7. The lease was in Defendant Roski's name, and Plaintiff was listed as an additional resident.

8. During this time, Plaintiff worked in the financial planning/investment management industry. She had obtained Series 6 and 63 securities licenses and was employed for a number of years by a financial planning and services company. Plaintiff had started preparing to take the Series 7 and Certified Financial Planner ("CFP") exams. She had also completed one year of course work at Colorado State University toward obtaining her MBA.

9. In 2017, however, Plaintiff was laid-off from her job when her employer's owner/founder decided to retire.

10. Defendant Roski, as an agent or employee of Majestic, represented to Plaintiff that Majestic's Colorado office had significant projects and employment opportunities, and he

2

encouraged Plaintiff to obtain a Colorado real estate broker's license so that she could work for his family's real estate business.

11. As further encouragement, Defendant Roski told Plaintiff that Majestic offered educational expense benefits that would cover the costs of the Colorado Real Estate Brokers ("CREB") study courses and the exam, and that would enable her to finish her MBA while also working for Majestic.

12. When Plaintiff expressed interest, Defendant Roski represented that he had the approval needed for Plaintiff to join Majestic as an employee. In particular, he represented to Plaintiff that he would eventually be heading Majestic's Colorado operations and that he had authority to build a team of brokers, agents, and other employees for the Colorado office.

13. In approximately April 2017, Defendant Roski started sending Plaintiff information about Majestic's projects, commercial real estate educational information and opportunities, and information about taking the CREB exam.

14. In approximately May and/or June 2017, Defendant Roski gave Plaintiff contract-based projects for her to work on for Majestic and provided her with other materials that appeared to be internal Majestic business information.

15. Defendant Roski represented that the projects for Majestic would not only help provide some extra income while she studied for the CREB exam, but also help her transition into her new employment position with Majestic.

16. In reliance on Defendant Roski's representations, coupled with actual Majestic projects, Plaintiff suspended her plans to resume her MBA studies, obtain the financial Series 7 and CFP licenses, and search for jobs in the financial planning/investment management field, and instead studied for, took, and passed the CREB exam in August 2017.

17. Plaintiff was able to take the study course and CREB exam without expending any of her own funds, which was consistent with Defendant Roski's representation that Majestic would cover those expenses.

18. Plaintiff also took additional courses, training, and seminars in real estate, specifically including an all-expense paid trip to a large commercial real estate convention in Las Vegas, Nevada, in approximately July 2017, with the understanding that her attendance and participation at the convention would further prepare her for a new career in commercial real estate with Majestic.

19. Going forward and continuing into the early months of 2018, Defendant Roski made numerous representations and engaged in related conduct to further reinforce his representations that Plaintiff had an actual job with Majestic.

20. Defendant Roski represented that Plaintiff would receive a salary of approximately $9,000 per month—over $100,000 per year—plus perks, benefits, and retirement plan.

21. Defendant Roski sent Plaintiff floor plans of her office space, told her that an office computer and office furniture had been approved, and encouraged her to shop for and choose a desk chair and other office furnishings by sending her links to office furniture vendors that Majestic purportedly used.

22. Plaintiff received money from Defendant Roski that he represented as being a broker's clothing allowance from Majestic.

23. Defendant Roski sent Plaintiff Majestic's employment handbook and information and enrollment forms for Majestic's health, dental, and vision insurance.

24. Defendant Roski obtained Plaintiff's Social Security Number, a copy of her Colorado Driver's License, and a voided personal check ostensibly for the purpose of setting her up with Majestic's benefit programs, payroll department, and arranging for the direct deposit of her paycheck.

25. Defendant Roski represented that Majestic would provide Plaintiff with a company car, and he went so far as to accompany her to two Range Rover dealerships to shop for, test drive, and ultimately select an AWD Range Rover Evoque Dynamic.

26. Defendant further legitimized the appearance of the car-shopping by test-driving and choosing a company vehicle for himself as well.

27. In connection with the representation that she would receive her own company car, Defendant Roski encouraged her to sell her personal vehicle and promised her that Majestic would cover the costs of a rental car until such time as Majestic purchased a car for her use.

28. With respect to the rental car in the interim, Defendant Roski facilitated the rental vehicle for Plaintiff through Enterprise. When the rental charges showed up on Plaintiff's credit card, Defendant Roski represented that Majestic employees had made a mistake and assured her that Majestic would reimburse her for the expense.

29. In reliance on these representations and Plaintiff's receipt of an actual rental vehicle, Plaintiff arranged to sell her personal car to her mother and paid to have the car transported from Colorado to California where her mother lived.

30. Defendant Roski assigned Plaintiff work and tasks to perform at home or offsite on behalf of Majestic and sent her money that Defendant Roski represented to be partial payments for her work, promised salary, and health benefits.

31.     Defendant Roski used his mobile telephone, which was ostensibly provided to him by Majestic for Majestic-related business, and his Majestic e-mail account, which contained Majestic's company name, logo/trademark, and official contact information, to text and communicate his representations to Plaintiff and to send her information about Majestic's purported employment of her, purported Majestic tasks and assignments, commercial real estate educational information, and internal Majestic communications about real estate matters, development projects, and pending oil and gas deals.

32.     Likewise, Defendant Roski would drop the names and/or forward e-mails of upper level employees and officers within Majestic, such as his uncle, his father, human resources managers/directors, and Majestic's counsel, and he spoke to Plaintiff as though her participation in Majestic's projects was commonly known within the business.

33.     Defendant Roski also represented that he was using his and Majestic's commercial real estate connections to help Plaintiff obtain her own apartment in a new apartment community in one of Denver's popular neighborhoods.

34.     During the time period that Defendant Roski was actively leading Plaintiff to believe that she was a Majestic employee, Defendant Roski, who traveled as part of his job, would use his travel schedule, health issues and emergencies, and/or other employees' scheduling difficulties to continually delay Plaintiff's official employment start date and salary payments, and to delay Plaintiff's reservation, application for, and move into her own apartment that he was ostensibly helping her obtain.

35.     Plaintiff relied on Defendant Roski's many representations about her employment with Majestic because of her pre-existing friendship with him, his close family relationships with Majestic's highest officers and employees, and the previously alleged efforts he made to support and reinforce his representations to Plaintiff.

36.     In so relying, Plaintiff focused her job transition efforts into studying commercial real estate and taking the real estate exam instead of moving forward with her former career in financial planning and resuming her MBA studies; performed work and helped Defendant Roski with projects for Majestic; spent time shopping for office furniture and a new company car; sold her personal vehicle and incurred rental car expenses; and packed up most of her personal belongings in expectation of moving into a new apartment.

37.     To cover her own expenses during this time, Plaintiff used her savings, including money she had saved to purchase her own single family home that had not yet been constructed.

38.     By February 2018, Plaintiff had become extremely anxious, stressed, and frustrated about the ongoing delays and apparent excuses she was getting from Defendant Roski about the job, salary and benefits, company rental car expenses, and the new apartment.

39. On or about February 15, 2018, Plaintiff started researching and trying to contact the people Defendant Roski regularly referred to in connection with the new apartment she was supposed to be getting.

40. In so doing, she discovered that he had been lying to her all along about reserving and applying for the apartment, and she immediately questioned all the other representations concerning her purported job with Majestic and its corresponding perks and benefits.

41. On or about the same date, Plaintiff confronted Defendant Roski, who initially denied lying to her but who eventually admitted that she had neither a new apartment nor a job with Majestic.

42. Following the confrontation, however, Defendant Roski continued to make hollow promises and excuses relating to getting Plaintiff out of the apartment she shared with him and into her own apartment, reimbursing Plaintiff for needlessly shipping her personal car to her mother in California, reimbursing Plaintiff's mother for needlessly borrowing money to buy Plaintiff's personal car, paying the rent and utilities for the apartment they shared, reimbursing Plaintiff for the rental vehicle, and other payments necessary to make Plaintiff whole as a result of Defendant Roski's elaborate fraudulent scheme.

43. When Plaintiff discovered Defendant Roski's fraud and deceit, she was unemployed with no income, no health insurance, and no place to live other than the apartment she shared with Defendant Roski before he moved out of it.

44. Defendant Roski, whose name was on the apartment lease and who had promised to help Plaintiff acquire her own apartment, eventually defaulted on paying the rent, which resulted in an eviction proceeding.

45. Because Plaintiff's name was associated with the lease as an additional occupant of the apartment, the eviction proceeding was reported to credit agencies, and Plaintiff's excellent credit rating dropped significantly.

46. The lack of employment with Majestic, coupled with the depletion of her savings and blighted credit rating, resulted in Plaintiff's inability to afford or get loan approval to move forward on purchasing the type of home she had been saving to buy.

47. Plaintiff was eventually able to purchase a small condominium, but only with the help of her mother. The blight on her credit report, however, resulted in less favorable loan terms, including a higher interest rate and higher monthly mortgage payments, delayed the closing, and extended the period of time during which she had no stable home or housing.

48. Plaintiff also had to expend frustrating time, effort, and energy to clean up and correct her credit reports.

49.     Defendant Roski's position with Majestic included the authority to recruit, hire, and/or facilitate the recruitment and hiring of new employees for Majestic at its Colorado offices.

50.     Given Defendant Roski's position of employment with Majestic and his close family relationship and connection to several of its highest level employees, officers, and directors, coupled with Majestic's failure to inform or otherwise advise Plaintiff that her employment with Majestic had not been approved or was only pending, Defendant Roski made the false representations and engaged in related conduct as an agent of Majestic with the actual, implied, incidental, and/or apparent authority to so act on Majestic's behalf.

51.     As a direct and proximate result of the false representations and related conduct that Defendant Roski made, engaged in, and continually reinforced as an agent, employee, and family-member insider of Majestic, Plaintiff suffered significant injuries, damages, and losses, including without limitation:

    a.    loss of a preferred apartment and the costs and expenses of finding a new place to live;
    b.    lost time and opportunities to maintain current financial planning licenses and obtain additional licenses and move forward in her previous financial planning career;
    c.    loss of time and benefit of previous studies for MBA;
    d.    loss of personal savings;
    e.    loss of income and health and retirement benefits;
    f.    blighted credit rating;
    g.    loss of more favorable pre-approved mortgage terms and ability to purchase her preferred home;
    h.    loss and/or delay in ability to achieve important life goals, including MBA degree and starting a family of her own;
    i.    physical illness;
    j.    emotional distress, fear, and anxiety;
    k.    aggravation of a pre-existing condition;
    l.    humiliation;
    m.    development of trust issues;
    n.    loss of enjoyment of life; and
    o.    great physical and mental pain and suffering.

## FIRST CLAIM FOR RELIEF
### (Fraud & Deceit against Defendants Roski & Majestic)

52.     Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

53.     Defendant Roski's representations that Plaintiff had a salaried employment position with Majestic that included perks and benefits, such as health and retirement benefits and a company car, were false.

54. These facts concerning Plaintiff's employment with benefits were important to her in deciding what to do with her career, including without limitation, her decision to pursue a Colorado real estate broker's license, forego obtaining licenses and jobs in the financial planning industry, continue her MBA studies, sell her personal car based on the promise of a new company car, finding her own place to live, and actually performing work for the benefit of Defendant Roski and Majestic.

55. At the time Defendant Roski made the previously alleged representations, he either knew that those representations were false, or he knew that he lacked sufficient information or confirmation to know whether the representations were true or false.

56. Defendant Roski made the representations with the intent that Plaintiff rely on them as evidenced by such conduct as forwarding internal Majestic communications to Plaintiff, giving her job assignments to perform, sending her money as partial payment for her purported salary and benefits, having her attend real estate conventions and educational seminars, sending her diagrams of her office location and plans along with links to office furniture vendors, helping her shop for and select a new company car, facilitating a car rental for a temporary vehicle in the interim, and continuously providing her with assurances and excuses to reinforce her reliance on his representations.

57. As previously alleged, Plaintiff did in fact rely on Defendant Roski's representations to her ultimate detriment.

58. Plaintiff's reliance was justified not only because of Defendant Roski's employment with Majestic, but also because of his close family relationship to several of its highest-level officers and the additional actions Defendant Roski took, as previously alleged, to reinforce Plaintiff's reliance on his false representations that she had a job with Majestic.

59. As a direct and proximate result of Plaintiff's reliance on Defendant Roski's representations as an agent or employee of Majestic with the requisite authority to make such representations, Plaintiff suffered injuries, damages, and losses as previously alleged.

60. Under the circumstances, Defendant Roski is directly liable for his false representations, and Defendant Majestic is vicariously liable for his representations under the theory of *respondeat superior*.

**SECOND CLAIM FOR RELIEF**
**(Extreme & Outrageous Conduct/Intentional Infliction of Emotional Distress against Roski & Majestic)**

61. Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

8

62. Defendant Roski's false representations to Plaintiff that she had a job with Majestic, coupled with his actions, as previously alleged, that served to reinforce and extend Plaintiff's reliance on these representations, constitutes atrocious, indecent, and intolerable conduct that would be viewed by members of the community as extreme and outrageous.

63. Defendant Roski repeatedly engaged in such extreme and outrageous conduct over the course of several months knowing that Majestic had not approved any form of employment for Plaintiff.

64. Nevertheless, Defendant Roski continued to assure Plaintiff that she had a well-paid employment position with benefits with Majestic and took other actions, as previously alleged, so that Plaintiff would continue to believe his representations and make important life, financial, and career decisions in reliance on his representations and actions.

65. Defendant Roski made the repeated representations and engaged in such conduct for the purpose of causing Plaintiff emotional distress, or he knew that his conduct would certainly cause emotional distress to Plaintiff once she learned the truth.

66. Alternatively, based on Defendant Roski's knowledge that Majestic had never approved, much less offered, a job to Plaintiff and his knowledge that Plaintiff had taken numerous actions in reliance on his conduct, Defendant Roski knew or should have known that his conduct and continued representations to the contrary would cause Plaintiff emotional distress once she learned the truth.

67. As previously alleged, Defendant Roski's false representation as an agent and/or employee of Majestic, that Plaintiff had a job with Majestic, and his related conduct to continually reinforce his representations, did in fact cause Plaintiff severe emotional distress.

68. Under the circumstances, Defendant Roski is directly liable for his extreme and outrageous conduct, and Defendant Majestic is vicariously liable for his conduct under the theory of *respondeat superior*.

### THIRD CLAIM FOR RELIEF
**(Promissory Estoppel against Roski & Majestic)**

69. Plaintiff incorporates herein the allegations contained in the preceding paragraphs.

70. As previously alleged, Defendant Roski made representations and thus effectively promised Plaintiff that she had a job with Majestic with benefits, including a salary, health insurance, retirement benefits, and a personal company car.

71. As previously alleged, Defendant Roski knew or should have known that his promises and representations, coupled with his position with Majestic and his family relationship

with its highest-level officers and directors, would induce the Plaintiff to make certain decisions in reliance on the promises and representations he made.

72. As previously alleged, Plaintiff relied on Defendant Roski's promises and representations.

73. As a direct and proximate result of the promises and representations that Defendant Roski made as an agent or employee of Majestic with the requisite authority to make such promises and representations, Plaintiff suffered injuries, damages, and losses as previously alleged.

74. Justice requires that the promises and representations Defendant Roski made as an employee and/or agent of Majestic be enforced or that Plaintiff be compensated for the injuries, damages, and losses she sustained as a result of the breach of promise.

WHEREFORE, Plaintiff, Cynthia Pacheco, respectfully requests that this Court enter judgment in her favor and against the Defendants, Thomas Roski and Majestic Realty Co., jointly and severally, in an amount that will fully and fairly compensate Plaintiff for her injuries, damages, and losses, plus statutory interest, costs, expert witness fees, attorney fees, and such other and further relief as the Court deems proper and just.

DATED this 14th day of January, 2019.

BEEM & ISLEY, P.C.

*(signature: Cliff Beem)*

Clifford L. Beem
A. Mark Isley
Danielle C. Beem
*This pleading was filed electronically pursuant to Rule 121 § 1-26*
*Original signed pleading is on file in counsel's office*

Address of Plaintiff:
3323 S. Monaco Pkwy., Unit C
Denver, CO 80222

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**